VERSE and REMAND for proceedings consistent with this opinion.

LUMMUS INDUSTRIES, INC.,
Appellee/Cross–Appellant,

v.

D.M. & E. CORPORATION, and Machine Development Corporation,
Appellants/Cross–Appellees.

Appeal Nos. 86–1462, 86–1507.

United States Court of Appeals,
Federal Circuit.

Nov. 23, 1988.

V. Bryan Medlock, Jr., Richards, Harris, Medlock & Andrews, Dallas, Tex., argued for appellee/cross-appellant. With him on the brief was Charles S. Cotropia.

Daniel F. McConnell, Charlotte, N.C., argued for appellants/cross-appellees.

Before NIES and NEWMAN, Circuit Judges, and RE, Chief Judge.*

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

PER CURIAM.

D.M. & E. Corporation (DM & E) and Machine Development Corporation (MDC) appeal the judgment of the United States District Court for the Western District of North Carolina, *Lummus Industries, Inc. v. D.M. & E. Corp.*, No. SH–C–84–344 (W.D.N.C. May 29, 1986), holding that appellants had contributorily infringed claims 13 and 22 of United States Patent No. 3,485,120 (the '120 patent) owned by Lummus Industries, Inc., and awarding $152,-591 in damages. Lummus appeals the court's denial of prejudgment interest. We affirm the judgment, vacate the denial, and remand.

### Background

The claims of the '120 patent, invention of Garland B. Keith entitled "Method and Apparatus for Cutting Elongated Material", are for an apparatus and method of cutting continuous filament textile fiber bundles (tow) into uniform, short lengths (staple). The desired length of the staple varies with the intended use of the fiber. Apparatus claim 13 and method claim 22 are at issue. Claim 13 is representative:

13. Apparatus for cutting continuous, filamentary material into staple fibers comprising:

(a) a cutting assembly including a plurality of knife edges aligned in parallel relationship and spacedly secured to a mounting member at radial distances from a point on said mounting member, said radial distances being in every instance less than the distance from said point to the periphery of said mounting member;

(b) said mounting member including a disc spaced from a ring between which said knife edges extend thereby forming a reel with said knife edges along the periphery of the bottom thereof;

(c) roller means spacedly mounted adjacent said knife edge and adjustable toward and away from said point on said mounting member whereby variable thicknesses of filamentary material can be introduced between said roller means and said cutting assembly and forced through the spaces between said knife edges thereby severing said filamentary material into lengths of controlled dimensions.

The cutting assembly here at issue is set forth in claim clauses (a) and (b). The distance between the knife edges on the cutting assembly (sometimes called a cutter reel or, simply, reel) determines the length of the staple. When it is desired to change the length of the staple, the cutting assembly is changed to a different reel having differently spaced knife edges.

MDC manufactures and DM & E sells cutter reels designed to fit the apparatus of the '120 patent. It was admitted that the reels are not suited for any other use. MDC and DM & E also provide "repair" services for cutter reels. Those activities that were agreed to be repair, such as repair or replacement of damaged or worn knife blades, were not included in the charged infringement.

The case was tried to a jury, and special verdicts were returned. DM & E and MDC assign error to the jury verdict of infringement, challenging the jury instructions and the verdict form. Appellants also assign error to the court's holding, based on jury findings, that inequitable conduct had not been proved.

### Repair or Reconstruction

The issue of infringement turned on whether installation and use of the accused reels was "reconstruction" of the patented apparatus, and thus an infringement of the '120 claims, or merely permissible repair.

DM & E and MDC assert that the jury instruction describing the difference between repair and reconstruction was insufficient, and did not instruct the jury on the "precise factual issue to be resolved". The jury instruction included the following:

The Court instructs you that the purchaser of a patented machine which includes a number of components not separately covered by the patent has a right to repair the machine but does not have the right to reconstruct the machine.

Repair of the machine is permissible when one component of the patented machine wears out prior to the entire machine wearing out. In this situation replacement of that worn out component is permitted and does not constitute infringement of the patent on the machine. However the replacement of a component which is not worn out with an accessory component which is a material part of the invention constitutes patent infringement, because it is reconstruction of the patented machine.

The jury was instructed that it must decide on all the evidence whether "this is a repair or a reconstruction":

> The Court instructs you that you should consider all the evidence presented by the parties as to the useful life of the cutter and the reels, the relative cost, and all other evidence offered on that subject in an effort to determine whether or not this is a repair or a reconstruction.

Lummus asserts that DM & E and MDC did not raise at the appropriate time the objections they now raise on appeal. Fed. R.Civ.P. 51 requires that all objections to jury instructions be made "before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Timely objection enables the trial judge to correct any error before the jury begins its deliberations. An objection not made before the district court is not normally considered on appeal, in the interest of the integrity of the jury system and the efficiency of trial and appellate procedures.

■ Rule 51 is not unique to patent cases, and thus we review its application in accordance with local practice. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573–75, 223 USPQ 465, 470–71 (Fed.Cir.1984). The Fourth Circuit holds generally that failure to object to a jury instruction before the jury retires amounts to waiver of the objection. *See, e.g., Gray v. Giant Wholesale Corp.*, 758 F.2d 1000, 1003 (4th Cir.1985). The Fourth Circuit has also held that jury instructions not objected to may be reviewed on appeal if necessary to correct fundamental error of law or pre-

vent a miscarriage of justice. *Havee v. Belk*, 775 F.2d 1209, 1220 (4th Cir.1985); *Klein v. Sears Roebuck & Co.*, 773 F.2d 1421, 1426 (4th Cir.1985).

■ DM & E and MDC state that "objections to the instructions" were made, off the record, before the jury retired, and that the district court delayed receiving formal objections until after the jury retired. We accept this premise, for the record shows that DM & E and MDC placed on the record, at the court's invitation, the following objection:

> My understanding of the instruction that was given to the jury was that if the defendants had made a new reel, that was a reconstruction. My objection to that is that the instruction should have been that if the purchasers of Lummus machines in mounting a reel in the machine reconstructed that machine then that would have been found to be an infringement.

DM & E and MDC now object that the instruction on repair/reconstruction should have included the question of "whether the nature of the reels is such that their repeated replacement is, and is expected to be, necessary to maintain the usefulness of the apparatus as a whole during its anticipated useful life." With the most benevolent reading of the objection actually raised, we do not see how it encompasses this question.

Reviewing the instructions on the standards set by the Fourth Circuit, the newly asserted objection to the jury instruction does not raise an issue of fundamental legal error. The instructions as given are a correct statement of law. Further, the point now raised by appellants was argued to the jury at trial. There is no basis for concluding that the judge and/or the jury were confused or misled as to the applicable law.

> Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct.

*Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933).

DM & E and MDC also object, for the first time, to the following portion of the instruction on the difference between permissible repair and impermissible reconstruction:

> Now the plaintiff contends, as I pointed out to you, that this is the heart of the invention and that to make the reel, manufacture it and to sell it new violates the very heart of the patent. The defendants say and contend that it's repair, that they bought the overall machine, and that this is only a part and that to make [it] new and to replace it is nothing more than repair.
>
> Now you must determine from this evidence which of these contentions is correct.

DM & E and MDC argue that this instruction misinformed the jury that manufacture and sale of the reel cannot be "repair" if the component is a sufficiently important element of the combination. Lummus points out that this part of the instruction merely summarizes the contentions of the parties, and that no objection was raised before the district court. Preceding this part of the instruction, the court told the jury:

> The plaintiff contends that the defendants have manufactured and sold many of the reels which constitute the very heart of the patented machine, that the reel mechanism is a material part of the invention ... which is the subject of the plaintiff's patent.
>
> ....
>
> Now, on the other hand, the defendants contend that the purchaser of the cutter machine has a right under the law to repair and replace parts of the machine as they wear out and that the conduct described by the evidence here is nothing more than the act of a purchaser

exercising the right to keep the machine repaired and in working order.

DM & E and MDC did not assert, at the time, that the district court unfairly summarized the contentions of both sides; nor do they now so state. Lummus' image of the "heart of the invention" was presented in argument, in connection with the statutory requirement that the component sold by a contributory infringer must be a "material part" of the invention,[1] a term also used in the instruction. The statement was subject to contradiction by DM & E and MDC, by evidence and argument at trial.

DM & E and MDC assert that the instructions to the jury are flawed because the court did not elevate their theory of the case to a judicial interpretation of law. Their theory of the case is not supported by the jurisprudence. In *Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 217, 100 S.Ct. 2601, 2623, 65 L.Ed.2d 696, 206 USPQ 385, 405 (1980), the Court stated that *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, 128 USPQ 354 (1961), "eschewed the suggestion that the legal distinction between 'reconstruction' and 'repair' should be affected by whether the element of the combination that has been replaced is an 'essential' or 'distinguishing' part of the invention." DM & E and MDC had full opportunity to present to the jury the point they argue on appeal: that the importance of the reel to the patented invention must be viewed in relation to the entire apparatus.

We further observe that no objection to these words in the instruction or the court's summary of the parties' contentions was made to the court at the time. In *Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1572 n. 10, 230 USPQ 393, 398 n. 10 (Fed.Cir.1986), this court noted that Rule 51 "was designed to avoid the heads-or-tails ploy by which counsel stands mute

---

**1.** The statute governing contributory infringement is as follows:

35 U.S.C. § 271(c): Whoever sells a component of a patented machine ... constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

when an erroneous instruction is given, hoping for a favorable verdict and planning to use the erroneous instruction on appeal if the verdict be unfavorable." Although DM & E and MDC have sought to reargue the facts, the only question before us is whether the instruction was so plainly contrary to law that, although not objected to as Rule 51 requires, a new trial must nevertheless be had.

■ The law entitles the purchasers of a patented apparatus to repair and replace worn or broken parts, but replacement that amounts to "a second creation of the patented entity" is not permissible. *Aro*, 365 U.S. at 345–46, 81 S.Ct. at 604–05, 128 USPQ at 359. *See also Wilson v. Simpson*, 50 U.S. (9 How.) 109, 125, 13 L.Ed. 66 (1850); *Porter v. Farmers Supply Service, Inc.*, 790 F.2d 882, 886, 229 USPQ 814, 816–17 (Fed.Cir.1986); *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1564, 2 USPQ2d 1201, 1204 (Fed.Cir.1987). The court's instructions in this case correctly and fairly presented the law. DM & E and MDC have not shown that no reasonable jury could have found that DM & E's customers were engaging in impermissible reconstruction of the patented apparatus by replacing the cutter reels.

### *Infringement*

■ DM & E and MDC assert that the instructions did not make clear to the jury that it must find that the purchasers of the cutter reels directly infringe the claims of the '120 patent in order to find that DM & E and MDC contributorily infringe those claims.

DM & E and MDC point out that the jury must have found that the purchasers of the reels impermissibly reconstructed the apparatus, in order to return a verdict for Lummus on the infringement issue. We agree. DM & E and MDC argue, however, that the instructions misled the jury into believing that construction of the reels themselves by MDC, rather than reconstruction of the apparatus by the owners thereof, was the basis for the finding of infringement; and that this is reversible error. This objection

to the instructions was preserved. *See supra.*

The district court's instructions on contributory infringement included the following:

Now the Court instructs you that under the law that whoever, without authority or license or other permission from the owner of a valid patent, makes or uses or sells the patented invention during the term of a valid patent infringes the patent. Such infringement is referred to as direct infringement. Contributory infringement is a little different.

A person commits contributory infringement when he makes and sells a component of a patented machine for use in practicing a patented process if such component constitutes a material part of the invention, and the person knows that this component is especially made or especially adapted for use in an infringement of the patent and the component is not a staple article or commodity of commerce suitable for substantial noninfringing use. A person is liable as an infringer of a patent if he contributes to the infringement of the patent.

Before the district court DM & E and MDC raised the objection that the infringement, if any, was by the purchasers of the reels, not the manufacture thereof by the defendants. It is not clear what reversible error the defendants are arguing, for we discern no error in law in the instruction given. The defendants did not deny that they sold the reels to owners of the patented apparatus. If DM & E and MDC are arguing that the owners of the entire apparatus, who purchased it from Lummus, thereby acquired an unlimited right to reconstruct and replace as well as to repair, this proposition is contrary to law. *See Aro*, 365 U.S. at 346, 81 S.Ct. at 604, 128 USPQ at 359. Whether or not DM & E and MDC presented this argument to the jury, they were correctly denied the instruction.

We have been shown no support for DM & E and MDC's assertion that the court did not adequately explain the difference between direct and contributory infringe-

ment. The instruction states the correct law, and the issue was also explained by witnesses and counsel at the trial. There is no indication that the jury did not understand its task. We discern no prejudicial legal error in the court's statements and instructions. *See United States v. Bayer,* 331 U.S. 532, 536–37, 67 S.Ct. 1394, 1396–97, 91 L.Ed. 1654 (1947) (a correct charge that sufficiently covers the issues to be determined by the jury should not be disturbed).

### Form of the Verdict

DM & E and MDC object to the form of the verdict on the question of infringement. They argue that it was legal error to request of the jury a special verdict that was of the nature of a general verdict, rather than special verdicts in the form of interrogatories. DM & E and MDC had requested that only interrogatories be presented, and that the district court itself should decide the question of infringement based on the answers to the interrogatories. Lummus advises, without contradiction, that DM & E and MDC did not renew its objection after the district court made known its selection of verdict form.

▋ In the Fourth Circuit, as elsewhere, the form of jury verdict is within the discretion of the trial judge, and is not ordinarily reviewable. *See* Fed.R.Civ.P. 49 commentaries ("It appears that the privilege of calling for a special verdict is not a right to be demanded by the parties but is rather a matter to be determined by judicial discretion"). *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2505 at 493 (1971). Thus although appellants argue that the jury should have been presented with only the interrogatories that appellants requested and were denied by the district court, particularly the question directed to "the relative costs of replacement, repair, and purchase of an entire new apparatus", the trial court did not abuse its discretion in its choice of verdict. *See Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 627, 225 USPQ 634, 643 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326

(1985); *Weinar v. Rollform, Inc.,* 744 F.2d 797, 809, 223 USPQ 369, 376 (Fed.Cir.1984) ("submission of interrogatories is not in all cases an unmixed blessing"), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). We also observe that the court referred, in its instructions to the jury, to the very point here pressed, that costs and useful life should be considered.

There is no "plain error affecting substantial rights of the parties." *Klein,* 773 F.2d at 1426. Our review of the record shows a straightforward effort by the district court to present these complex facts and law in a comprehensible way to the jury, in order to achieve a fair and just trial.

The jury's verdict of infringement is supported by substantial evidence, and is affirmed. No sufficient basis for a new trial has been shown.

### Inequitable Conduct

DM & E and MDC raise the defense of inequitable conduct which, if established, would have rendered the '120 patent unenforceable. In this case the jury, in answer to specific interrogatories, found that a nondisclosed prior art reference, considered upon reexamination of the '120 patent, was a "moderately material" reference, and that the inventor and his attorneys had been "grossly negligent" in failing to call it to the attention of the Patent Office during original examination. Accepting those findings, the trial court concluded that there was no inequitable conduct.

▋ During reexamination, the examiner rejected three claims as "fully anticipated". From that, DM & E and MDC propose a rule of *per se* high materiality that would remove from judge and jury the authority to find the facts respecting both anticipation and materiality, based solely on an examiner's rejection for "anticipation". There is no such rule.

On appeal DM & E and MDC assert that the district court improperly instructed the jury on the law of inequitable conduct and improperly found no inequitable conduct because of the court's misunderstanding of

the law. Per DM & E and MDC, the court's rulings reflect the erroneous view that the decision on inequitable conduct is determined by the effect of the nondisclosed reference on the patent as a whole rather than on individual claims. The principle is well settled that if inequitable conduct is established as to any claim, all claims of the patent are rendered unenforceable. *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1561, 223 USPQ 1089, 1093 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

■ We have reviewed the instructions and the ruling of the court and cannot agree that the court's decision reflects the prejudicial error DM & E and MDC assert. Inequitable conduct, as distinguished from the underlying fact issues, was not given to the jury to decide. The court considered not only the jury's findings, but also all of the evidence. The court balanced the factors of materiality and intent. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The court found that the amendments made on reexamination to three of the claims were only "in minor detail", which suggests clarification rather than change in substance. DM & E and MDC fail to controvert that finding with any evidence or argument as to the substance of the amendments. Accordingly, DM & E and MDC have failed to carry their burden to persuade this court of legal or factual error.

### Prejudgment Interest

Neither side appeals the amount of damages awarded by the jury or the measure based on lost profits. Lummus appeals the district court's failure to include prejudgment interest in the award.

■ In *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211, 217 USPQ 1185, 1189 (1983), the Supreme Court held that "pre-

judgment interest should ordinarily be awarded under [35 U.S.C.] § 284." [2] But the Court expressly declined to "construe § 284 as requiring the award of prejudgment interest whenever infringement is found", *id.*, observing that because § 284 "states that interest shall be 'fixed by the court,' ... in our view it leaves the court some discretion in awarding prejudgment interest." *Id.* at 656–57, 103 S.Ct. at 2062–63, 217 USPQ at 1189. Thus the grant or denial of prejudgment interest is reviewed to determine whether the district court abused the available range of discretion in so doing. *See, e.g., Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 23, 223 USPQ 591, 600 (Fed.Cir. 1984) ("Prejudgment interest should *ordinarily* be awarded absent some justification for withholding such award") (emphasis in original).

The district court gave three reasons for its denial of prejudgment interest: (1) the award was based upon lost profits rather than a reasonable royalty, (2) there was inadequate evidence for precise calculation of prejudgment interest, and (3) Lummus waited "a substantial period from the time it learned its patent was being infringed until it filed this action". Lummus asserts that these three reasons reflect legal error or are based on facts which are not supported by substantial evidence.

■ DM & E and MDC acknowledge that the first reason offered by the district court is legally erroneous. Prejudgment interest is not limited to damages measured by a royalty. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556, 222 USPQ 4, 9 (Fed.Cir.1984).

■ Nor may a court deny interest simply because the calculation is difficult. "[W]hen the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer." *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056,

---

**2.** 35 U.S.C. § 284 provides in part: Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

1065, 219 USPQ 670, 675 (Fed.Cir.1983). In *Lam* this court held that when the infringer and the patent owner were the only suppliers of the product there was a presumption, for purposes of the calculation of damages, that the infringing sales would have been made by the patentee. To deny prejudgment interest based on calculation difficulties alone would be error.

We review the third rationale for the district court's denial of prejudgment interest in light of the Supreme Court's statement in *General Motors* that "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." 461 U.S. at 657, 103 S.Ct. at 2063, 217 USPQ at 1189.

■ It is clear from *General Motors* that the withholding of prejudgment interest based on delay is the exception, not the rule, and that the discretion of the district court is not unlimited. Here the district court held that the evidence was insufficient to establish laches, a decision unchallenged on this appeal. Lummus argues that "the equities of finding laches and of denying prejudgment interest are coextensive." In *Radio Steel & Manufacturing Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1558, 229 USPQ 431, 434 (Fed.Cir.1986), this court stated that the justification for withholding prejudgment interest must have some relation to the reasons for awarding it, holding that the plaintiff's wrongful conduct did not prejudice the defendant and did not justify such withholding. The *Radio Steel* decision, and those referred to by the Supreme Court in *General Motors*, provide support for Lummus' position that, absent prejudice to the defendants, any delay by Lummus does not support the denial of prejudgment interest.

Having determined that two out of the three reasons for the district court's rejection of prejudgment interest were in error, we observe that the court remarked that it was denying prejudgment interest "[u]nder all the circumstances". In the absence of an analysis by the district court, we do not undertake to determine *ab initio* whether whatever delay may have existed is a sufficient basis for denial of prejudgment inter-

est. It is appropriate, as in *First National Bank of Chicago v. Material Service Corp.*, 597 F.2d 1110, 1121 (7th Cir.1979), cited in *General Motors*, 461 U.S. at 657 n. 11, 103 S.Ct. at 2063 n. 11, 217 USPQ at 1189 n. 11, that the trial court weigh the remaining ground for denial of prejudgment interest, on the facts of this case, against the authority favoring the award of prejudgment interest.

The denial of Lummus' request for prejudgment interest is vacated, and the issue is remanded to the district court.

### Lummus' Motion

Lummus' motion to include certain portions of its reply brief is granted. The court has considered only issues properly presented in the briefs of both parties.

### Summary

On this appeal and cross-appeal, the judgment of the district court is affirmed, the denial of prejudgment interest is vacated, and the case is remanded for further proceedings consistent with this opinion.

### Costs

Costs are taxed in favor of Lummus.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.