871 F.2d 1096
 11 U.S.P.Q.2d 1375
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PIPELINE DEHYDRATORS, INC., Plaintiff/Cross-Appellant,
v.
SOUTHEAST PIPELINE CONTRACTORS, INC., Defendant-Appellant.
 Nos. 88-1386, 88-1387.
 United States Court of Appeals, Federal Circuit.
 March 1, 1989.
 
 Before RICH, MAYER and MICHEL, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Southeast Pipeline Contractors, Inc. (Southeast), appeals from a judgment entered on a jury verdict in the United States District Court for the District of Wyoming, Ewing T. Kerr, Judge, holding U.S. Patent No. 3,864,102 ('102 patent) not invalid and willfully infringed by Southeast, and awarding $192,500.00 in compensatory damages to the patent owner, Pipeline Dehydrators, Inc. (PDI). PDI cross-appeals from the judgment and orders denying its requests for increased damages and prejudgment interest and awarding PDI less than the full amount it requested for attorney fees. We modify the award of post-judgment interest, vacate and remand for the court to reconsider its decision denying prejudgment interest, and affirm in all other respects.
 
 OPINION
 
 2
 A. Southeast has not persuaded us that the district judge erred in denying its motion for JNOV on the issue of obviousness.
 
 
 3
 Southeast reviews the prosecution history and concludes:
 
 
 4
 [T]he Patent [and Trademark] Office found the claims to be non-obvious based on their belief that there was no teaching which would lead one to combine "the concept of compressing air, removing oil then removing water and having all the equipment on a portable or towable means as a unit." (Emphasis added) ... [I]t is clear, if the Patent Office had been aware of prior art teaching this combination, then no patent would have issued.
 
 
 5
 We disagree. The internal quotation is from an examiner's January 1986 denial of a reexamination request. The examiner did not "find" the claims to be nonobvious; he simply decided the newly cited art did not raise a substantial new question of patentability. Furthermore, Southeast takes the examiner's words out of context. What the examiner referred to as "the concept of compressing air," etc., which Southeast calls "this combination," is by no means the same thing as Powers' invention as a whole as defined in the claims. The examiner's remarks, when read in full, do not establish that a patent would not have issued if the PTO had been aware of prior art teaching "this combination."
 
 
 6
 Southeast devotes most of its discussion of obviousness to an attempt to show that all the elements of Powers' invention were old. Southeast then states the ultimate question to be:
 
 
 7
 Whether a man [of ordinary skill in the art] ... would have found the claimed subject matter of the '102 patent, as a whole, to have been obvious at the time Powers [made] ... the invention, assuming that he was aware of:
 
 
 8
 (1) the use of portable air compressors to push cylindrical pigs through long, large diameter pipelines in remote locations for the purpose of dewatering lines; and
 
 
 9
 (2) the existence, operation and uses of the Pall heat-less [sic] dryer system?
 
 Southeast concludes:
 
 10
 Since Powers' invention is nothing more than the combination of a standard pigging operation with the Pall heat-les dryer system, the answer to this question is an unqualified "yes." ...
 
 
 11
 Again, we disagree. Southeast argues in essence that, since Powers' invention is nothing more than a combination of old elements, it would have been obvious. This is not the law. Lacking in the prior art is the necessary suggestion to make the claimed combination. The existence of particular equipment to dry air does not in and of itself suggest combining that equipment with a pigging operation to dehydrate miles of large diameter pipeline in remote locations. Southeast states that the Pall "Heat-Les" dryers were used "in drying instrument air, process gases, blanket gas, [and in] communication system purging," quoting from the Pall manual. The manual also depicts a "self-contained total dry air package," available in "[s]tandard models or units engineered for your specific system needs." The reproduction in the record is poor, but we accept Southeast's representation that the specific "package" shown is skid mounted and in that sense portable. Even so, we are not persuaded that these uses, most of them in-plant, together with the depiction of one portable unit with the legend "[s]tandard models or units engineered for your specific needs," suggest the desirability and thus the obviousness of Powers' invention. The other facts of record and the arguments in Southeast's reply brief do not sway our decision. It may have been obvious to try the combination Powers invented, but that is not the standard. Southeast has not persuaded us that the court erred in denying its motion for JNOV on the issue of obviousness.
 
 
 12
 B. Southeast asserts that the district judge erred in refusing to set aside the jury's verdict of willful infringement. We conclude, after a careful review of the record, that substantial evidence supports the verdict. We reject Southeast's assertion of error in the jury instruction on willfulness. Southeast takes a single sentence out of the context of the instruction and points to it as error. Instructions must, however, be read as a whole. So read, the instruction on willfulness adequately stated the law.
 
 
 13
 C. Southeast also argues error in that the district judge declined to ask the jury whether Powers' patent was unenforceable for an innocent mistake in naming the true inventor or inventors. If the jury had considered this question and decided a mistake was made, the court had authority to order that the inventorship error be corrected, pursuant to 35 USC 256. Accordingly, we conclude that any error in that regard was harmless to Southeast.
 
 
 14
 D. Southeast asserts the district court erred in denying its motion for a new trial on validity. Southeast complains the judge failed to instruct the jury it should give little weight to Powers' statements of his intent on the issue of experimental use. As a general proposition, the weight to be given testimony is for the jury. The jury knew Powers was an interested witness. It was its province to decide what weight to give Powers' statements. We conclude that the court did not err in its refusal to give Southeast's proposed instruction.
 
 
 15
 E. Southeast contends the court erred in denying its motion for a new trial on damages on the basis that the jury's award of $192,500.00 in lost profits was not supported by substantial evidence. Southeast asserts there was not substantial evidence to show: (1) absence of acceptable non-infringing substitutes for Powers' invention, and (2) lost profits, two elements of the test set forth in Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156, 197 USPQ 726, 730 (6th Cir.1978). We have reviewed Exxon's specifications for the Barroil job and related testimony and conclude the jury could reasonably have decided that Exxon was willing to consider only two methods of drying: "a series of cleaning swabs utilizing dessicated air" and "a vacuum drying technique." As to the latter, one company, Coulter, submitted a $447,520.00 bid to "Dewater, Pig, Dry, [and] Pack to 50# [psi]" using a vacuum process. Powers gave his opinion that this was not feasible because "[i]t takes about three times as long to dry with a vacuum drying method as it does with the dry air process." PDI's bid of $385,000.00 was $62,520.00 less than Coulter's bid. The other bids, Kopp's and Maintech's, were apparently directed to cleaning and drying the pipeline with "a series of cleaning swabs utilizing dessicated air," and, on all the evidence, the jury could reasonably have concluded that these were potentially infringing processes. On the measure of lost profit, Powers testified that PDI's business was seasonal and that he strove for a 50 percent profit margin on dehydrating jobs. There was additional evidence; we do not intend this as an exhaustive review. In sum, to paraphrase our opinion in Weinar v. Rollform Inc., 744 F.2d 797, 808, 223 USPQ 369, 375 (Fed.Cir.1984), there was evidence interpretable by the jury as applicable to the Panduit elements, and, in any event, those elements are not an absolute requirement in every case. As in Weinar, we here decline to disturb the jury's damage award. We reject as meritless Southeast's assertion that the award was "clearly the result of passion and prejudice."
 
 
 16
 F. Southeast asks us to vacate and remand so the judge can explain the basis for the award of attorney fees to PDI. Southeast's complaint is that the judge did not make an express finding that the case was exceptional. The court's Judgment on Verdict, however, directed "that plaintiff's reasonable attorney fees in the amount of Sixty Thousand Dollars ($60,000.00) are hereby awarded as authorized by 35 U.S.C. Sec. 285." Section 285 authorizes an award of attorney fees in "exceptional" cases, and, given that the jury found Southeast's infringement to be willful, we conclude that the court's award of attorney fees rests on a sound basis.
 
 
 17
 PDI has not persuaded us that the court abused its discretion in awarding PDI only $60,000.00 for attorney fees.
 
 
 18
 G. PDI does not challenge Southeast's assertion that, pursuant to 28 USC 1961(a), the award of post-judgment interest at 8.25 percent was erroneous and that the correct rate is 6.59 percent. A remand to correct such a small error would be pointless. We order that the judgment be modified to provide that post-judgment interest at the rate of 6.59 percent shall run from the date the district court entered judgment.
 
 
 19
 H. PDI contends on cross-appeal that the district judge's failure to award increased damages was an abuse of discretion in view of the jury's verdict of willful infringement. The jury's duty was to find as a fact whether or not the infringement was willful. The court's duty was to assess the degree of Southeast's culpability in deciding whether to increase the damages. 35 USC 284; Rite-Hite Corp. v. Kelly Company, Inc., 819 F.2d 1120, 1126, 2 USPQ2d 1915, 1919 (Fed.Cir.1987). To our minds, the verdict on willfulness approaches the outer limit of reasonableness. We leave that verdict undisturbed, but we discern no abuse of discretion in the district judge's refusal to award increased damages under the circumstances of this case.
 
 
 20
 Unfortunately, remand is required on the issue of prejudgment interest. The court declined to award prejudgment interest to PDI, stating that such an award would be "inequitable" and constitute "a windfall." Pursuant to our recent decision in Lummus Industries, Inc. v. D.M. & E. Corp., 862 F.2d 267, 274-75, 8 USPQ2d 1983, 1988-89 (Fed.Cir.1988), these reasons are insufficient, without further explanation, to justify denying prejudgment interest to a successful plaintiff in a patent infringement suit. Accordingly, we vacate and remand for the court to reconsider its decision on prejudgment interest in light of what we said on that subject in Lummus and cases cited therein.
 
 COSTS
 
 21
 Each party to bear its own costs.