**VIRGINIA PANEL CORPORATION,**
Plaintiff,

v.

**MAC PANEL COMPANY, Defendant.**

**Civ. A. No. 93–0006–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

June 5, 1995.

Gregory Thomas St. Ours, Wharton, Aldhizer & Weaver, David A. Penrod, Hoover, Penrod, Davenport & Crist, Harrisonburg, VA, Kenneth E. Krosin, Timothy R. DeWitt, Christopher W. Brody, Lowe, Price, Leblanc & Becker, Alexandria, VA, for Virginia Panel Corp.

Holmes Conrad Harrison, III, Harrison, Thumma & Start, P.C., Harrisonburg, VA, C. William Craycroft, Neal J. Stephens, Jennifer L. Tsay, McCutchen, Doyle, Brown & Enersen, San Jose, CA, Dalbert U. Shefte, Shefte, Pinckney & Sawyer, Charlotte, NC, for Mac Panel Co.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The plaintiff in this case, Virginia Panel Corporation (VPC), filed a complaint and amended complaint against the defendant, Mac Panel Company (MPC), for patent infringement and false advertising. MPC responded with several counterclaims and affirmative defenses. The court decided several of the issues at the summary judgment stage and bifurcated the trial into two phases: 1) patent infringement issues; and 2) all remaining issues. Following a jury trial of the patent infringement phase of this case in which the jury found that MPC had willfully infringed two of VPC's patents, the parties have filed several post-trial motions. The second trial has not yet occurred. For each motion filed by VPC, VPC has submitted a supporting memorandum, MPC has submitted a response to the motion, VPC has replied to MPC's response to the motion, MPC has objected to VPC's reply to MPC's response to the motion, and VPC has replied to MPC's objection to VPC's reply to MPC's response to the motion. Although some of the motions are related, the court will address each in turn.

## I.

■ Although some of the issues remain to be decided at the second trial, VPC has submitted a motion for entry of judgment as to the patent infringement issues. Fed. R.Civ.P. 54(b) states:

When more than one claim for relief is presented in an action, ... the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In applying Rule 54(b), the court must determine whether there is a "final judgment," an ultimate disposition of an individual claim; and if so, whether there is any just reason for delay. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 6, 8, 100 S.Ct. 1460, 1463, 1464, 64 L.Ed.2d 1 (1980). VPC cites *W.L. Gore & Assocs., Inc. v. IMPRA, Inc.*, 975 F.2d 858 (Fed.Cir.1992), in support of its position. In *W.L. Gore*, the court bifurcated the plaintiff's patent infringement claims from the defendant's patent misuse defense and antitrust counterclaims, just as in this case. The first phase of the trial, however, resulted in findings that the defendant had not infringed the patent, that the patent was invalid, and that the plaintiff was guilty of laches. The court then entered final judgment on the patent infringement claim to allow the plaintiff to appeal the decision. The Federal Circuit stated that courts "must focus on both the finality of the judgment and the separateness of the claims for relief." *Id.* at 862. Applying this standard, the court found that the entry of final judgment as to the patent infringement claim was proper because the patent claim was finally adjudicated and the claims were separate, despite any factual overlap with the patent misuse defense. *Id.* at 864. Notwithstanding VPC's assertion that this case is factually indistinguishable from *W.L. Gore*, this case presents a different situation. In *W.L. Gore*, the plaintiff lost on the patent infringement claim, whereas here VPC's patent has been found to be infringed. The patent misuse defense still could affect the patent infringement claim by making the patent unenforceable. In *W.L. Gore*, however, the patent misuse defense became superfluous because the defendant already had prevailed on the patent infringement claim. *See id.* at 863.

■ VPC contends that MPC's patent misuse defense is no longer in the case be-

cause MPC wanted to assert a patent misuse defense to infringement during the first trial and the court did not permit it. Despite VPC's belief to the contrary, MPC consistently has asserted patent misuse as a defense to patent infringement. The court bifurcated the patent misuse defense from the patent infringement trial and decided to try that issue in the second trial because it is much more factually related to MPC's antitrust counterclaims than to VPC's patent infringement claims. Although as a legal matter, the patent misuse defense has more impact upon the infringement issues than upon the antitrust issues, when considering the orderly presentation of evidence the patent misuse defense is more appropriately tried along with the antitrust issues. VPC also asserts that the patent misuse defense is no longer in the case because the jury has found patent infringement by MPC, and VPC contends that the basis for the patent misuse defense was VPC's assertion of its patent rights and threats to sue for infringement. In addition to this basis for its patent misuse defense, however, MPC also continuously has asserted its patent misuse defense based upon what it alleges is VPC's expansion of its patent rights over unpatented devices, such as component parts that are used along with the devices covered by VPC's '005 patent. Expansion of patent monopoly rights over unpatented devices can constitute patent misuse and act as a defense to patent infringement. *See, e.g., Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 180, 100 S.Ct. 2601, 2605, 65 L.Ed.2d 696 (1980). MPC still can assert a successful patent misuse defense, notwithstanding the jury's finding that MPC's devices infringe VPC's patents, and this issue could affect the finding of patent infringement.[1]

Another substantial consideration is the avoidance of piecemeal litigation. Although entry of final judgment would allow VPC to begin pursuing collection of the judgment, it also would allow MPC to appeal without awaiting the resolution of the remaining issues. Based upon the zealousness with which the parties have pursued this matter up to this point, the court has full confidence that virtually all of the issues in this case will be appealed by the party which does not prevail. The court of appeals should not be burdened with multiple appeals for no good reason. The minor benefit to be gained from entering final judgment at this point on the patent infringement claim is far outweighed by the apparent lack of finality of the patent claim and the waste of judicial resources. VPC's motion for entry of judgment is denied.

## II.

■ VPC next moves for treble damages. In this case, the jury awarded VPC $1,207,534.00 for MPC's infringement of VPC's '005 patent, and $20,300.00 for MPC's infringement of VPC's '530 patent. After compensatory damages for patent infringement are determined, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Whether to enhance, and the extent of any enhancement, is committed to the sound discretion of the trial court. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir. 1992). A finding of willful infringement is sufficient to support an enhancement of damages, but such a finding does not mandate an enhancement of damages. *Id.* "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* In assessing the egregiousness of the defendant's conduct, the three primary factors to consider are:

(1) whether the infringer deliberately copied the ideas or design of another;

(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and

(3) the infringer's behavior as a party to the litigation.

**1.** Throughout this opinion, the court may refer to damages owed to VPC for MPC's patent infringement. Such language should not be construed as any indication of the court's view on the

merits of MPC's patent misuse defense, which could defeat the damages awarded to VPC for patent infringement.

*Id.* at 826–27. Other factors which are appropriate to consider, especially in determining the extent of any enhancement, are the following: (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Id.* at 827.

■ Upon consideration of the above factors, the court determines that a small enhancement is appropriate. Most of the rationale justifying an enhancement can be found in the evidence which produced a finding of willful infringement, and the court will not prolong this Opinion unnecessarily by repeating that evidence. Several points, however, mitigate against a large enhancement of damages. First, although a finder of fact could conclude that there was intentional copying involved in the infringement of both the '005 and the '530 patents, the most reasonable view of the evidence is that any copying was less intentional than it was recklessly indifferent. Second, although MPC did not do all that it could have done to investigate the scope of the '005 and '530 patents and determine whether they were invalid or not infringed, its behavior can be characterized as marginally sufficient. It conducted patent searches and obtained attorney opinions, albeit based upon incomplete information. Third, MPC's behavior as a party to the litigation has been acceptable. MPC forcefully has asserted many counterclaims and affirmative defenses, some of which were decided against it on summary judgment, but none of its claims or defenses has been frivolous or asserted in bad faith. Fourth, many of the issues in this case were close questions, considering the heightened standard of proof for some of the issues and the differing inferences that could have been drawn from much of the evidence. Lastly, although less of a consideration than MPC's conduct, it does appear, albeit on perhaps less than complete information, that MPC's financial condition is such that a large enhancement of damages could drive it out of business. Although an enhancement of damages is partly motivated by punishment, this court does not consider it appropriate to levy a punishment which under these circumstances perhaps could be equivalent to an organizational death sentence. Notwithstanding all of these mitigating circumstances, the court cannot ignore the evidence supporting the jury's finding of willful infringement. After consideration of all of the factors set forth in *Read*, including but not limited to the ones explicitly discussed herein, the court will enhance the damages by ten percent. As a result, VPC's motion, which was presented as a motion for treble damages, is denied.

### III.

■ The next motion submitted by VPC is its motion seeking attorney's fees in the amount of $1,036,085.60. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As with enhancement of damages, a finding a willful infringement is sufficient to support an award of attorney's fees, but it does not mandate an award of attorney's fees; however, if the court denies attorney's fees after a finding of willful infringement it must explain why the case is not exceptional. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir. 1990), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991). In this case, although the jury found willful infringement, the court thus far does not consider this to be an exceptional case justifying an award of attorney's fees. The circumstances which mitigate against a large enhancement of damages also demonstrate why this is not an exceptional case up to this point. As a result, VPC's motion for attorney's fees is denied without prejudice to renew at the appropriate time, if circumstances change.

### IV.

■ VPC also has moved to recover costs in the amount of $120,678.56. "[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). The costs that may be recovered, however, are limited to those listed in 28 U.S.C. § 1920 and other related statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494,

2499, 96 L.Ed.2d 385 (1987). Section 1920 lists the following as appropriate costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The parties agree that VPC is entitled to some costs, but they dispute the amount and the timing of the award. First, the parties dispute whether VPC should receive $10,112.00 for the cost of daily transcripts. The cost of daily copies of trial transcripts is recoverable if the daily transcript is indispensable, rather than merely for the convenience of the attorneys. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 233–34, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). The parties next argue about the $56,671.00 request for the cost of photocopying of discovery materials. MPC asserts that VPC has asked for all of its photocopying costs, without separating out necessary photocopying from photocopying done for the convenience of the attorneys or photocopying for issues upon which VPC has not yet prevailed. MPC also challenges the following other costs for which VPC requests reimbursement: (1) $38,602.00 in deposition fees, without indicating whether the depositions were necessary to the case; (2) $178.16 in publications; (3) $37.98 in lodging; (4) $840.00 for a Harris Corporation legal assistant; (5) $125.00 for medical records; and (6) $150.00 for Equifax. The court need not resolve this issue at this time. Because the court will not enter judgment until the resolution of the remaining issues, and because MPC's patent misuse defense could affect the resolution of the patent infringement issues, VPC is not yet finally a "prevailing party" within the meaning of the statute. As a result, future events could affect the amount of costs awardable to a prevailing party. Accordingly, VPC's motion for costs is denied as premature, without prejudice to renew at the appropriate time.

## V.

VPC next requests an accounting of MPC's sales of infringing devices for the time period January 1, 1995 to March 10, 1995, the date of the jury's damages award. At trial, the parties stipulated that they would present damages evidence for sales through December 31, 1994, thus requiring an accounting of the damages that have accrued since then. MPC responded by providing its actual sales figures for the infringing products, and VPC concedes that this figure is acceptable. As a result, VPC's motion for an accounting is granted, and VPC will be awarded an additional $27,685.27 in damages. Adding this figure to the amount awarded by the jury, the sum becomes $1,255,519.27.

## VI.

 VPC also requests an award of prejudgment interest on its damages. MPC contends that prejudgment interest should not be awarded because of VPC's delay in bringing suit and their refusal to negotiate a settlement in good faith. Moreover, if prejudgment interest is awarded, MPC contests VPC's method of computation. Prejudgment interest normally should be awarded to the prevailing patent holder in a patent infringement suit where necessary to afford the patent holder full compensation for the infringement. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *see also* 35 U.S.C. § 284 ("[T]he court shall award the claimant damages adequate to compensate for the infringement ... together with *interest* and costs as fixed by the court.") (emphasis added). Delay in bringing suit does not justify denial of prejudgment interest absent prejudice to the infringer. *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 274–75 (Fed.Cir.1988). Although MPC contends that it suffered both economic and evidentiary prejudice as a result of VPC's delay in

filing suit, the court does not consider the delay prejudicial enough to defeat an award of prejudgment interest. Although less interest would have accumulated if VPC had brought suit earlier, interest simply reflects the time value of the money to which MPC had access before VPC recovers its damages. If prejudgment interest is computed in an economically realistic manner, delay in filing suit will not affect MPC any more than if it never had access to the funds that rightfully belonged to VPC.

■ Although the exact amount of interest cannot be computed until final judgment is entered and the date of such judgment is known, the court can decide the method of computation that should be used. Both sides have submitted pleadings detailing what they consider to be the appropriate method of computation. The parties agree that the appropriate rate is the one year Treasury Bill rate, but VPC's method compounds quarterly while MPC's method compounds annually. VPC's method assumes sales evenly distributed among each period, while MPC's calculation attempts to conform the individual sales amounts to evidence presented at trial for a more realistic computation. Furthermore, VPC's method assumes that all of the sales occurred at the beginning of each period, while MPC's method assumes that sales occurred continuously throughout each period. Overall, MPC's calculation seems to be a much more reasonable reflection of economic reality than VPC's calculation. As a result, at the time of any final judgment in favor of VPC the court will award prejudgment interest computed in accordance with the method detailed in "Defendant Mac Panel Company's Opposition to Plaintiff Virginia Panel Corporation's Motion for Prejudgment Interest on Damage Award," filed April 5, 1995.

### VII.

■ The next motion filed by VPC is its request for an Order permanently enjoining MPC from infringing VPC's '005 and '530 patents, both of which the jury found to be willfully infringed by MPC. MPC asserts, however, that a permanent injunction is premature because if it prevails on its patent misuse defense, then the injunction would

have to be vacated. It also has represented to the court that it has stopped selling the infringing devices and does not intend to sell any more unless and until it prevails on its patent misuse defense.

■ For many of the same reasons that the court will not enter judgment on VPC's patent infringement claims, it will not enter a permanent injunction. Although neither party has suggested any middle ground on this issue, the court believes that an appropriate solution is a temporary injunction. VPC clearly has established a likelihood of success on the merits, given the jury's finding of infringement. In addition, in patent cases, irreparable harm is presumed upon a showing of validity and infringement, based upon the finite term of the patent grant. *See Richardson v. Suzuki Motor Co., Ltd,* 868 F.2d 1226, 1247 (Fed.Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). Having met the standard for the issuance of injunctive relief, VPC is entitled to some protection pending the resolution of MPC's patent misuse defense. Accordingly, the court will enter a temporary injunction enjoining MPC from directly or contributorily infringing VPC's '005 or '530 patent. Such injunction will either expire or be converted into a permanent injunction upon the entry of final judgment, depending upon the resolution of MPC's patent misuse defense.

### VIII.

VPC next requests that the court modify its March 7, 1995 ruling finding that VPC granted an implied license for its customers to use MPC ITAs with VPC receivers. Three days after the court issued its ruling, during the damages phase of the trial, VPC presented evidence that since January of 1993 all of its customers have received a quotation form which includes an express prohibition against using other companies' ITAs with VPC receivers. The exact language used is as follows:

Virginia Panel Corporation Receivers are designed for exclusive use with VPC ITAs, both of which are covered by U.S. patent number 4,329,005. Use of ITAs manufactured by other suppliers with VPC Receivers or use of Receivers manufactured by

other suppliers with VPC ITAs is prohibited.

VPC warrants that its modular interface systems meet all design requirements. Any use of components in these systems manufactured by other suppliers will void this warranty.

Based upon this statement included on VPC's quotation forms sent to every customer since January of 1993, VPC requests that the court modify its implied license ruling to find no implied license for sales since January of 1993.

MPC may be liable for contributory infringement if its customers are liable for direct infringement of the '005 patent. *See Universal Elec., Inc. v. Zenith Elec. Corp.*, 846 F.Supp. 641, 645 (N.D.Ill.1994), *aff'd*, 41 F.3d 1520 (Fed.Cir.1994). There can be no infringement by VPC's customers, and thus no contributory infringement by MPC, if VPC granted its customers an implied license to use other companies' ITAs with its receivers. *See id.* An implied license exists if (1) the product involved has no non-infringing uses; and (2) the circumstances of the sale "plainly indicate that the grant of a license should be inferred." *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed.Cir.1986). This inquiry should focus on the "facts and circumstances surrounding the sale of the patented item" at the time of the sale. *Universal Elec.*, 846 F.Supp. at 647. This court found an implied license for VPC customers to use MPC ITAs with VPC receivers based upon the standard industry practice of using different companies' products interchangeably and the absence of any affirmative restriction by VPC on the sale of its receivers. *See* March 7, 1995 Memorandum Opinion at 3. Because VPC did not present evidence of its quotation form until after the court had issued its ruling, the court did not consider the form in its decision. The issue, therefore, is whether the language used on the quotation form is sufficient to defeat the finding of an implied license since January of 1993.

MPC asserts that the quotation form is insufficient to preclude an implied license because it only deals with warranties and does not even mention the word "infringe."

VPC states that it need not expressly state that use of other companies' ITAs with a VPC receiver would infringe the '005 patent; rather, the issue is whether based upon the circumstances of the sale customers would believe that they are licensed under the '005 patent to use other companies' ITAs with VPC receivers. *Met–Coil*, 803 F.2d at 686. Notwithstanding MPC's contention, the statement on the quotation form plainly precludes any finding of an implied license for sales accompanied by the form. It states that both the receiver and the ITA are covered by the '005 patent and use of another company's ITA with a VPC receiver is prohibited. The subsequent mention of warranties does not seem to detract from the plain language that it follows. MPC asserts that the written quotation form is not effective enough to overcome the standard industry practice of interchangeability, and that VPC would have to show that its salespeople told each customer that such interchangeability is prohibited with VPC receivers and ITAs in order to defeat an implied license. Clear statements in writing emanating from the upper management of VPC, however, seem to the court to be more effective in preventing customers from believing that they have a license to use other companies' ITAs with VPC receivers than do oral statements by one of several individual salespeople. When considering the written quotation form along with the other circumstances of the sale of VPC receivers, the grant of a license to use other companies' ITAs with the VPC receivers plainly cannot be inferred. To make such an inference in the face of such clear language would be patently unreasonable, notwithstanding any industry standard of interchangeability. Because VPC has presented evidence establishing that all of its customers since January of 1993 have received the quotation form at the time of the sale, those sales have not included an implied license. Accordingly, VPC's motion to modify the March 7, 1995 implied license ruling is granted. Given that the jury found that MPC had contributorily infringed the '005 patent by selling its ITAs for use with VPC receivers, MPC is liable for additional damages stemming from those sales that occurred since January of 1993. The exact

amount of the additional damages will be decided at a later date, in accordance with the schedule set forth in the accompanying Order.

## IX.

■ VPC's final motion is a request for leave to file a renewed motion for summary judgment on MPC's monopolization and attempted monopolization counterclaims. The basis for VPC's desire to refile a motion for summary judgment is the jury's finding of infringement of the '005 patent. To prove monopolization or attempted monopolization, MPC must show that VPC willfully acquired or maintained monopoly power in an exclusionary manner. *Advanced Health–Care Serv. v. Radford Community Hosp.*, 910 F.2d 139, 147 (4th Cir.1990). Exploitation of legitimate competitive advantages, however, is insufficient to constitute exclusionary conduct. *Id.* at 147 n. 14; *see also Abbott Labs. v. Brennan*, 952 F.2d 1346, 1354 (Fed.Cir.1991) ("[T]he commercial advantage gained by new technology and its statutory protection do not convert the possessor thereof into a monopolist."). VPC asserts that the only exclusionary conduct asserted by MPC is VPC's efforts to exclude MPC from selling products covered by the 005 patent. As a result of the jury's finding that those products infringe the '005 patent, VPC contends that it merely was exploiting a legitimate competitive advantage—a United States patent.

■ MPC responds that a renewed motion for summary judgment would be a waste of time and resources because its evidence is much greater than mere allegations of VPC's efforts to enforce its patent rights. In particular, MPC points to VPC's alleged misuse of its patents by: (1) preventing MPC from competing in the sale of receivers and ITAs to the U.S. government; (2) preventing MPC from selling commercial ITAs to be used with VPC receivers; (3) preventing MPC from selling ITAs for use in the Navy's CASS program; and (4) preventing MPC from selling non-patented components for use with VPC's receiver by threatening to void the warranty on the receiver. In sum, MPC asserts that VPC has attempted to extend its patent rights beyond the scope of what the patent protects, thus subjecting itself to suit for antitrust violations. *See Ethyl Gasoline Corp. v. United States*, 309 U.S. 436, 457–58, 60 S.Ct. 618, 625–26, 84 L.Ed. 852 (1940). Without commenting on each of MPC's allegations, it is sufficient to find that evidence suggesting that VPC has used its patent rights to attempt to tie in sales of non-patented component parts and preclude sales by others of non-patented component parts is enough to survive summary judgment. As a result, even if some of MPC's allegations supporting its antitrust counterclaims are resolved by the jury's finding of infringement, sufficient evidence remains to support MPC's claims of monopolization and attempted monopolization.[2] Allowing VPC to file a renewed motion for summary judgment, therefore, would be a waste of time and resources. Accordingly, VPC's motion for leave to file a renewed motion for summary judgment on MPC's monopolization and attempted monopolization counterclaims is denied.

## X.

■ In addition to all of VPC's motions, MPC has filed a motion for a new trial based upon *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), which was decided after the trial of the patent infringement issues. The court in *Markman* held that the interpretation and construction of patent claims is an issue of law reserved for the court. *Id.* at 979. In this case, the court submitted the issue of claim interpretation to the jury, after instructing the jury as to the proper way in which claims must be interpreted. In light of *Markman*, MPC contends that submitting the issue of claim interpretation to the jury was a fundamental error requiring a new trial.

Fed.R.Civ.P. 51 states in part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to con-

---

2. Nothing in this Opinion should be construed as an indication of the court's view of the merits of MPC's monopolization and attempted monopolization counterclaims, other than a finding that MPC has presented evidence sufficient to survive summary judgment on those counterclaims.

sider its verdict, stating distinctly the matter objected to and the grounds of the objection." Notwithstanding, "[t]he failure to object may be disregarded if the party's objection has previously been clearly made to the court and it is plain that a further objection would be unavailing." *City of Richmond, Va. v. Madison Mgt. Group, Inc.*, 918 F.2d 438, 453 (4th Cir.1990) (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2553, at 639–40 (1971)). Although MPC did not object specifically to the jury instructions dealing with claim interpretation, at a hearing immediately before the trial it moved to transfer the determination of most of the issues in the case to the court. In doing so, MPC did not expressly mention the issue of claim interpretation; rather, it argued that infringement by the doctrine of equivalents, which necessarily requires interpretation of the patent's claims, should be decided by the court because of its equitable nature. MPC did not at any time request that the issue of claim interpretation should be decided by the court, other than generally arguing that the claim of infringement by the doctrine of equivalents should be decided by the court. Later, at a chambers conference involving instructions to the jury, MPC again did not request that the instructions regarding interpretation of patent claims should be removed and decided by the court, regardless of whether the ultimate question of infringement would be decided by the jury. Furthermore, any comments made by the court at that time were directed to several issues generally, or, viewing the comments in the light most favorably to MPC, to the claim of infringement by the doctrine of equivalents. The court did not comment specifically about interpretation of the patent claims. Whether the court actually would have taken from the jury the issue of interpretation of the patent claims is not the issue; under these circumstances, it cannot be said that it was clear that the objection previously had been made and that further objection would have been unavailing. MPC simply never attempted to separate the issue of interpretation of patent claims from the claim of infringement by the doctrine of equivalence. As a result, MPC's failure to object precludes it from moving for a new trial pursuant to *Markman*.

Even if MPC had preserved the error about which it now complains, the error would not require a new trial because MPC suffered no prejudice from it. MPC asserts that the jury misinterpreted the claim terms "slide" and "reciprocate" and that proper interpretations of those terms would mandate a finding of no infringement by the doctrine of equivalents. The overwhelming evidence presented at trial, however, shows that the interpretation of those claim terms that the jury must have used is the correct interpretation. After observing all of the evidence presented at trial, if the court had reserved for itself the interpretation of the patent claims, it would have reached the same conclusion as reached by the jury. In *Markman*, the court stated: "Although in this case the trial court ... should have instructed the jury as to the meaning of the claims (including the disputed term "inventory") its failure to do so was rendered harmless by the court's subsequent response to Westview's post-trial motion." *Markman*, 52 F.3d at 981. Likewise, in this case, the court's error, if any, in failing to instruct the jury as to the meaning of the claims, including the disputed terms "slide" and "reciprocate," is rendered harmless by the fact that the court's interpretation of the disputed claim terms would have been the same as the claim interpretation that the jury must have used in finding the '005 patent infringed by the doctrine of equivalents. Because MPC has suffered no prejudice, even if it had preserved the error by objecting in a timely fashion, MPC's motion for a new trial is denied.

An appropriate Order shall this day issue.