Stephen M. STEWART, Appellee,

v.

B. Vandenburg HALL, Appellant.

No. 83–2211.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1985.

Decided Aug. 27, 1985.

Rehearing Denied Oct. 25, 1985.

B. Vandenburg Hall, Fairfax, Va., for appellant.

Lewis H. Goldfarb, Alexandria, Va. (Charles M. Rust-Tierney, Hirschkop & Grad, Alexandria, Va., on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WIDENER, Circuit Judge.

Hall, an attorney, appeals from a judgment entered against him after a jury found him liable for legal malpractice and awarded the plaintiff compensatory and punitive damages. Finding that the case was not tried on the proper theory of malpractice and, additionally, that this constituted fundamental error, we vacate the judgment of the district court and remand for a new trial on the proper theory.

The plaintiff sued Hall on the theory that Hall negligently represented the plaintiff in a child custody matter and in so doing intentionally concealed from his client, the plaintiff, certain material facts with respect to Hall's preparation of the child custody case. In early June 1981, the plaintiff retained Hall to seek a change of custody for the plaintiff's children from the plaintiff's ex-wife to plaintiff.[1] Although the plaintiff upon initial consultation with Hall intended only to seek enforcement of his visitation rights under a property settlement agreement that his ex-wife continually failed to honor as to visitation, upon Hall's advice the plaintiff decided to seek custody of the children, although a Colorado court had entered a judgment against the plaintiff for approximately $2,400 for child support arrearages. The evidence showed that Hall represented to the plaintiff that the arrearages would pose no problem at the custody hearing because he, Hall, would secure a schedule of payments prior to the hearing whereby the plaintiff could satisfy the Colorado judgment by making pay-ments of $50 per month. Such a schedule of payments, as Hall represented to the plaintiff, would eliminate the arrearages problem as an issue at the custody hearing. The evidence further showed that the plaintiff and Hall discussed the strategy that counsel was to pursue in seeking the change in custody. Hall advised that it would be wise to obtain a contempt citation against the ex-wife for her repeated denial of the plaintiff's visitation rights and that such a citation should be obtained prior to the custody hearing. The plaintiff signed the show cause petition and affidavit which were necessary for a contempt citation to be issued against his ex-wife, and Hall assured him that it was not necessary for the plaintiff to be present at the show cause hearing.

After retaining Hall and discussing strategy for the custody hearing, the plaintiff went to summer school in Europe and returned to Virginia in August 1981, approximately three days before the scheduled custody hearing. There was evidence that when the plaintiff returned he was surprised to discover that Hall had not set up the schedule of payments to cure the arrearages and that he asked Hall whether the matter would be taken care of prior to the custody hearing. According to the testimony of the plaintiff and the plaintiff's father, Hall represented that an associate of his was handling the arrearages problem and that it would be taken care of prior to the custody hearing. However, no schedule of payments was set up prior to the custody hearing and, as a result, the plaintiff went into the hearing owing child support arrearages under the outstanding Colorado judgment.

During the plaintiff's absence, Hall also failed to appear at the show cause hearing and, as a result, the petition was dismissed, so there was no show cause order outstanding for a denial of visitation prior to the custody hearing. The plaintiff testified that he discussed the contempt hearing

---

[1]. The facts in our opinion are stated most favorably from the plaintiff's point of view and, of course, are not binding in another trial.

matter with Hall prior to the custody hearing and that Hall stated, "Well, it didn't happen. We didn't have the hearing because you didn't sign the petition."

Despite failing to get a contempt citation and to palliate the arrearage problem, Hall represented the plaintiff at the custody hearing and put on evidence including that relating to the relative fitness of the custodial and noncustodial parent which, of course, was relevant to the determinative issue in the case. During the custody hearing, the Virginia domestic relations court issued a rule to show cause against the plaintiff and the plaintiff's ex-wife for their respective failures to abide by the terms of their property settlement agreement. It found that the ex-wife had violated the agreement by denying the plaintiff visitation and that the plaintiff had violated the agreement by failing to pay child support. That court dismissed the plaintiff's petition for change of custody without hearing from the plaintiff's ex-wife and, in giving its ruling, indicated that the plaintiff probably would have won custody but for the arrearages in child support payments.[2]

The malpractice case in the district court was tried on the theory that if the jury found that the attorney was negligent on the basis of the alleged acts and omissions, the jury would then consider whether the client was damaged by the negligent conduct. The district court instructed the jury that it could find compensatory damages on the basis of the client's claim that he suffered losses attributable to mental anguish, emotional distress, and inconvenience. The court further instructed the jury that it could find punitive damages only if it found in favor of the plaintiff on the issue of negligence, awarded compensatory damages, and additionally determined that the defendant's acts were wanton or oppressive.

The jury awarded both compensatory and punitive damages. On appeal, Hall claims that the award was excessive and unsupported by the evidence; that the judgment was obtained by fraud and false evidence; and, that the court committed reversible error by admitting into evidence a letter of private reprimand issued by the Virginia State Bar to Hall. Not without great thought on the matter, however, we vacate the judgment of the district court on a different theory. We are convinced that the case was tried on the wrong theory of legal malpractice and that it would be fundamental error to allow the judgment to stand. Because the case must be tried again upon a different theory, some or all of the issues raised in Hall's brief may not arise, or may well be presented in different context. We thus think it more appropriate not to decide any of them.

■ To prevail in a malpractice action based on an attorney's alleged negligence in connection with litigation, the general rule is that the negligence is actionable only if the claimed damages were proximately caused by the negligence. *Maryland Casualty Co. v. Price*, 231 Fed. 397 (4th Cir.1916). These damages are calculated on the basis of the value of the claim lost or judgment suffered by the alleged negligent attorney. Thus, in making the determination that an attorney's negligence proximately caused a client's damages, the trier of the malpractice action must find that the result in the underlying action would have been different but for the attorney's negligent performance. *See generally* Annot. 45 A.L.R.2d 5, 19; Annot. 45 A.L.R.2d 62, 63.

■ The Virginia Supreme Court, in *Allied Productions, Inc. v. Duesterdick*, 217 Va. 763, 232 S.E.2d 774 (1977), adopted the general rule in legal malpractice cases requiring proof of proximate cause of loss to the client. Citing *Price, supra*, with approval, the Virginia Supreme Court quoted

---

**2.** Neither the oral or later written rulings in the case mention the best interest of the children. It is quite clear that the domestic relations court dismissed Stewart's petition because he was in violation of a previous decree concerning support payments. "Unfortunately", to Stewart, the judge said, "you decided to pick and choose, from the property settlement agreement, the parts that you liked."

the following rationale for requiring the plaintiff to prove actual injury:

> If an attorney, in disregard of his duty, neglects to appear in a suit against his client, with the result that a default judgment is taken, it does not follow that the client has suffered damage, because the judgment may be entirely just, and one that would have been rendered notwithstanding the efforts of the attorney to prevent it.

*Id.* at 765, 232 S.E.2d at 775, quoting *Maryland Casualty Co. v. Price*, 231 Fed. at 402. Therefore, it is apparent that Virginia law requires the trier of fact to consider the merits of the underlying claim. The alleged negligence is actionable only upon a determination that the underlying claim would have been resolved differently but for the attorney's negligence. *Accord Byrd v. Martin, Hopkins, Lemon and Carter, P.C.*, 564 F.Supp. 1425 (W.D.Va. 1983) (diversity legal malpractice action under Virginia law required court to assess merits of underlying claim), *aff'd. mem.* 740 F.2d 961 (4th Cir.1984).[3]

The malpractice action before us, however, was tried on the theory that if the jury found Hall to be negligent on the basis of certain of his alleged acts and omissions, the jury could then award compensatory damages on that basis without considering the proper result of the underlying litigation. The district court refused to admit evidence concerning the merits of the underlying dispute and, thus, the jury in the malpractice action did not determine whether the plaintiff would have won custody of the children, but for Hall's negligence, under Virginia domestic relations law. Instead the jury was asked only to determine whether Hall's negligent performance caused the client mental anguish, emotional distress, and inconvenience. On this basis, the jury found that Hall was negligent and that his negligence was the proximate cause of the plaintiff's mental anguish, emotional distress, and inconvenience.

If the case had been tried on the proper theory, the jury would have been required to make the custody determination on the underlying claim solely upon an evaluation of the best interests of the children, without penalty because of the fact that plaintiff was delinquent in his support payments. *Brown v. Kittle*, 225 Va. 451, 303 S.E.2d 864 (1983), so holds on a set of facts almost indistinguishable from those here, relying upon a line of Virginia cases going back to 1930. "It is our duty to see that the child's best interests are promoted rather than to see that the father is punished by denying him relief [custody] to the detriment of the son." 303 S.E.2d at 868. So the only evidence of the result of the underlying case relating to the proper theory of malpractice was the statement by the domestic relations judge to the effect that the plaintiff probably would have won custody but for the support money arrearage. This statement was in conflict with his implicit holding (as in *Brown*) that the best interests of the children would have been served by awarding custody to the father, and was in conflict with the rule in *Brown*. The jury in the malpractice case never considered the best interests of the children and accordingly never made a determination of whether or not the plaintiff would have won the underlying custody dispute but for the defendant's negligence.[4]

Given the district court's refusal to allow exploration into the merits of the custody dispute, there was a failure of proof with respect to the element of causation in the malpractice claim. Notwithstanding that, or perhaps because of it, the evidence and instructions on causation passed substantially without objection from Hall. Hall, however, does raise the proper issue on appeal, but only to support his argument that the damages are excessive and unsupported by the evidence.

---

**3.** Virginia law, of course, controls in this diversity case.

**4.** We do not suggest that, on retrial, evidence that Stewart was delinquent in support payments is not evidence that may be considered by the jury along with all the other evidence in the case in determining the best interests of the children.

■ While it is true that we ordinarily will not consider issues raised for the first time on appeal, *see United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir. 1980), *cert. denied sub nom. Shell Oil Co. v. United States*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981), we have recognized that in very limited circumstances we may consider such an issue if the error is "plain" and if our refusal to consider such would result in the denial of fundamental justice. *See id.* at 1108; *Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1089 (4th Cir.1985); *see also Miller v. Premier Corp.*, 608 F.2d 973, 983 (4th Cir. 1979). Writing for the court in *Modave v. Long Island Jewish Medical Center*, 501 F.2d 1065 (2d Cir.1974), Judge Friendly explained:

> [T]he "plain error" phrase is found in F.R.Cr.P. 52, not in the civil rules. Except perhaps for errors that could not have been corrected on proper objection, the doctrine applicable in civil cases is the more limited one of "fundamental error," [citations omitted]—an error so serious and flagrant that it goes to the very integrity of the trial.

*Id.* at 1072. *See generally* 9 Wright & Miller, *Federal Practice & Procedure* § 2558 at 672.

Application of the plain or fundamental error theory is proper in this case even though we have considered the issue *sua sponte*. *See Ricard v. Birch*, 529 F.2d 214, 216 (4th Cir.1975); *Washington Gas Light v. Virginia Electric & Power Co.*, 438 F.2d 248, 251 (4th Cir.1971).

■ We think that since this case was tried on the improper theory of malpractice as demonstrated by the trial judge's refusal to receive evidence and instruct the jury on the issue of the underlying custody dispute, there was a complete failure of proof with respect to the essential element of causation. Moreover, the omission of the ordinary scheme of proof for an essential element of the cause of action is fundamental error undermining the integrity of the trial.

Accordingly, we vacate the judgment of the district court and remand for a new trial on the proper theory.

VACATED AND REMANDED.