62 F.3d 1433
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SLADE GORTON & CO., INC., and William R. Lambert, partners
of Gorton-Lambert Joint Venture, Plaintiffs-Appellants,
v.
Tim MILLIS, d/b/a B.F. Millis & Sons, Defendant-Appellee.
 No. 92-1497.
 United States Court of Appeals, Federal Circuit.
 Aug. 9, 1995.
 
 Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.
 Per Curiam opinion filed for the court. Dissenting opinion filed by Circuit Judge NEWMAN.
 DECISION
 PER CURIAM.
 
 
 1
 Slade Gorton & Co. and William R. Lambert ("Gorton-Lambert") appeal from the July 10, 1992 order of the U.S. District Court for the Eastern District of North Carolina, No. 90-38-CIV-4-BO, denying Gorton-Lambert's post-verdict motion for judgment as a matter of law in its infringement suit against Tim Millis. The court's denial of Gorton-Lambert's motion left intact the jury's special verdicts of February 19, 1992, according to which Gorton-Lambert's U.S. Patent No. 4,532,677 ("the '677 patent") was found invalid for obviousness-type double patenting, and its Reissue Patent No. 31,527 ("the '527 patent"), U.S. Patent No. 4,255,834 ("the '834 patent"), and U.S. Patent No. 4,330,904 ("the '904 patent") were all found unenforceable due to Gorton-Lambert's inequitable conduct before the Patent & Trademark Office. Because Gorton-Lambert invited the error in the jury instruction on double patenting and failed properly to preserve its objections to the inequitable conduct findings for appeal, we affirm.
 
 DISCUSSION
 Double Patenting
 
 2
 The jury found the '677 patent invalid for obviousness-type double patenting over the earlier U.S. Patent No. 3,662,432 ("the '432 patent"), another patent owned by Slade Gorton & Co. Both patents claim a device whereby shelled scallops are eviscerated by rollers that grip the viscera and pull them from the scallop muscle. The claims of the later '677 patent include two elements not included in the claims of the earlier '432 patent: (a) roughened roller surfaces for better gripping, and (b) the use of a non-friction positive drive that reduces roller slippage. The question of obviousness-type double patenting, when posed with reference to two utility patents, is resolved by determining whether the claims of the later patent would have been obvious in view of the claims of the earlier patent. See, e.g., In re Goodman, 11 F.3d 1046, 1052, 29 USPQ2d 2010, 2015 (Fed. Cir. 1993); Gerber Garment Technology, Inc. v. Lectra Sys., Inc., 916 F.2d 683, 686, 16 USPQ2d 1436, 1439 (Fed. Cir. 1990).
 
 
 3
 Two sets of instructions on the law of double patenting were given to the jury. Counsel for both parties twice gave the trial court incorrect advice as to the governing law, as a result of which both sets of jury instructions contained plain errors of law. Specifically, the first instruction incorrectly stated that obviousness-type double patenting must be found when the claims of either patent would be obvious in view of the claims of the other, while the second instruction incorrectly stated that obviousness-type double patenting can be found only when the claims of both patents would each have been obvious in view of the claims of the other. The first erroneous instruction favored Millis by enlarging the grounds on which the jury might find the '677 patent invalid; the second erroneous instruction, by contrast, favored Gorton-Lambert by narrowing the grounds for a finding of invalidity. Gorton-Lambert collaborated in the framing of this second instruction by twice expressly asserting its correctness-once in response to an inquiry by Millis' counsel, and once again in response to the trial court's inquiry-before the jury retired to deliberate, and failed to object to the instruction in its post-trial motion for judgment as a matter of law or its main brief on appeal. Instead, Gorton-Lambert focused both its post-trial motion and its appeal on alleged insufficiencies of the evidence.
 
 
 4
 The challenge to the correctness of the final double patenting instruction appeared for the first time in Gorton-Lambert's reply brief, and Millis responded to it for the first time at oral argument. Because, however, Gorton-Lambert twice embraced the instruction when pressed and only now attempts to repudiate it, we cannot relieve Gorton-Lambert of the ill effects of this concededly erroneous instruction. The U.S. Court of Appeals for the Fourth Circuit, whose law we apply to this assignment of error, Lummus Indus. v. D.M. & E. Corp., 862 F.2d 267, 270, 8 USPQ2d 1983, 1985 (Fed. Cir. 1988), does not entertain an appeal from an erroneous jury instruction that the appellant has invited by helping to formulate it, AG Sys., Inc. v. United Decorative Plastics Corp., 55 F.3d 970, 973, 35 USPQ2d 1048, 1050 (4th Cir. 1995). We have no difficulty concluding, according to this authority, that Gorton-Lambert invited the error in the double patenting instruction and is thus without recourse to correct it on appeal.
 
 
 5
 Gorton-Lambert's challenge to the sufficiency of the double patenting evidence, though properly before us, is also unavailing. It was explained to the jury that both the '432 and '677 patents claim a device whereby shelled scallops are eviscerated by rollers that grip the viscera and pull them from the scallop muscle. Witnesses and counsel further explained that the claims of the later '677 patent include two elements not included in the claims of the earlier '432 patent. The parties put on evidence relevant to their dispute as to whether the two additional elements were known to others skilled in the art before the application for the earlier patent was filed, a factual question that turned on the credibility of the witnesses. Similarly, there was testimony that an eviscerator with a frictional drive was known to be ineffective, since scallop slime would cause it to slip, and that positive drives were used in some prior art shrimp peeling machines. Our review convinces us that the record contains sufficient evidence upon the basis of which a jury could reasonably find that the '677 patent's claims added only obvious variants of the invention already claimed in the '432 patent. Accordingly, the jury's verdict on double patenting must stand.
 
 Inequitable Conduct
 
 6
 The jury also found the '527, '834, and '904 patents unenforceable due to inequitable conduct before the Patent & Trademark Office. The issue on which the asserted breach was based was whether William Lambert, the inventor named in these three patents, affirmatively misrepresented to the PTO that he was the sole inventor of the claimed subject matter.
 
 
 7
 A patent may, of course, be held unenforceable for breach of the duty of candor owed to the PTO if the patentee intentionally misled or deceived the examiner about a fact material to the decision to grant the patent. Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed. Cir. 1988) (in banc), cert. denied, 490 U.S. 1067 (1989). Gorton-Lambert sought to undercut Millis' affirmative defense of unenforceability by adducing evidence that tended to show, in contradistinction to Millis' evidence, that Lambert was indeed the sole inventor of the subject matter claimed in each of the three patents. Millis did not, however, adduce direct evidence of Gordon-Lambert's allegedly deceptive intent. Gorton-Lambert based its rebuttal case on its view that Lambert was in fact the sole inventor. The issue of Gorton-Lambert's deceptive intent vel non was simply not addressed by either party.
 
 
 8
 The jury instructions on the law of inequitable conduct were not a model of clarity on the separability of the materiality and intent prongs of the inequitable conduct defense. The jury was, however, instructed that "[i]ntentional concealment and nondisclosure in connection with an application for a patent may be evidence of an equivalent to a false misrepresentation." Though Gorton-Lambert might well have succeeded in obtaining a more clear and exacting instruction from the trial court upon a timely objection, it waited, as with the double patenting issue, to make its first objection to the correctness of this instruction in its reply brief on appeal. Its attack on the sufficiency of Millis' evidence of deceptive intent was also withheld until that late hour; its post-trial motion focused, as did its case in chief, on the absence of any material information that needed to be disclosed.
 
 
 9
 Though Gorton-Lambert attempts to cast its assignment of error regarding the deceptive intent requirement as directed to the jury instructions, its contention actually goes to the sufficiency of the evidence of deceptive intent. As such, the contention must fail as not properly before us, since Gorton-Lambert in no way challenged the sufficiency of the evidence on deceptive intent in its post-trial motion for judgment as a matter of law. Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 862, 20 USPQ2d 1252, 1261 (Fed. Cir. 1991), cert. denied, 504 U.S. 980 (1992). In addition, the record contains sufficient evidence upon the basis of which a jury could reasonably find that Lambert misrepresented that he was sole inventor of the subject matter claimed in the three challenged patents. The verdicts of inequitable conduct must therefore stand.
 
 
 10
 PAULINE NEWMAN, Circuit Judge, concurring in part, dissenting in part.
 
 
 11
 Federal Rule of Civil Procedure 51 bars the assignment of error to jury instructions for which objection was not timely raised. That rule has been softened in the Fourth Circuit by judicial interpretation, for those rare cases in which "the error is 'plain' and if our refusal to consider such would result in the denial of fundamental justice." Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir. 1985). Thus the Fourth Circuit, in which this case was tried, has reviewed on appeal, even when they were not challenged at trial, jury instructions that "plainly misstated fundamentally controlling substantive principles." Miller v. Premier Corp., 608 F.2d 973, 983 (4th Cir. 1979). The Federal Circuit has previously applied the Fourth Circuit standard to review jury instructions that were not objected to at trial, in order "to correct a fundamental error of law or to prevent a miscarriage of justice." Lummus Industries, Inc. v. D.M. & E. Corp., 862 F.2d 267, 270, 8 USPQ2d 1983, 1985 (Fed. Cir. 1988). This case raises issues of that obligation, and its faithful discharge by the Federal Circuit in view of plain and fundamental error of patent law.
 
 
 12
 On the issue of double patenting I concur with my colleagues that the jury verdict is sustainable despite the two sets of incorrect jury instructions. However, on the issue of inequitable conduct the errors of law were plain, were multiple, and were prejudicial; and this court's refusal to consider them denies fundamental justice. Thus I must dissent as to the disposition of the issue of inequitable conduct.
 
 I. DOUBLE PATENTING
 
 13
 Two sets of incorrect instructions on the law of double patenting were given successively to the jury. The judge received an incorrect statement of the law from counsel for both sides, twice, and both instructions contained plain error of law. The first jury instruction was proposed by counsel for Millis, and instructed that obviousness-type double patenting must be found when the claims of either patent would be obvious from the claims of the other. This methodology was called "cross-reading," and is incorrect. The correct criterion is whether the claims of the second patent would be obvious from the claims of the first.
 
 
 14
 This error can be material to the result, for according to this incorrect rule a factfinder should find obviousness-type double patenting if the earlier claims are obvious in light of the later claims, even when the later claims are unobvious in light of the earlier claims. For example, the earlier claims may (as here) be more general, while the later claims may be directed to an improved device. In such a situation, even if a later-claimed improvement were unobvious as compared with the earlier-claimed device, the converse may not obtain.
 
 
 15
 After the first instruction was given an objection was raised by counsel for Gorton-Lambert. The record does not state the nature of the objection. However, the district court interrupted charging the jury, expressing concern that the instruction was too complicated. The following day the court gave the following instruction:
 
 
 16
 You should direct your inquiry to whether the claims of the 677 patent would have been obvious in 1967 in light of the claims of the 432 Patent and the prior art, and vice versa, whether the claims of the 432 Patent would have been obvious in light of the claims of the 677 Patent and the prior art in 1967. [Emphasis added.]
 
 
 17
 The instruction no longer incorrectly stated that it sufficed if the claims of either patent would have been obvious in light of the other; instead, the instruction now stated that double patenting required that the claims of both patents would have been obvious in light of the other. This too was incorrect.
 
 
 18
 This second instruction was also Millis' proposal. When Millis' attorney asked Gorton-Lambert's attorney if he agreed, Gorton-Lambert's attorney answered "We can do that, Judge." And when the judge himself asked if it was right, Gorton-Lambert's attorney answered "Yes sir." No objection was made to this second instruction when it was given, or by post-trial motion, or in Gorton-Lambert's main brief on this appeal. The challenge to the correctness of this instruction appears for the first time in Gorton-Lambert's reply brief, and was responded to by Millis, for the first time, at oral argument.
 
 
 19
 Federal Rule of Civil Procedure 51 relates to jury instructions to which the losing party did not timely object:
 
 
 20
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider the verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 21
 Although exceptions are rare in the case law, they have been made when fundamental justice requires. However, care is required lest the now-apparent error had been "invited" by the party complaining on appeal of injustice at trial.
 
 
 22
 The concept of invited error refers to the tactic of guarding the trial court's error as insurance against an adverse verdict. To grant relief in such circumstances "would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy." Merchant v. Ruhle, 740 F.2d 86, 92 (1st Cir. 1984). AG Sys. Inc. v. United Decorative Plastics Corp., F.3d , 35 USPQ2d 1048, 1050 (4th Cir. 1995). Thus a party will not be aided by the appellate court if legal error were either introduced by the party or accompanied by silence before the trial court when there is reason to believe that the party was aware of the error.
 
 
 23
 Millis argues that if it were legal error to include the "and vice versa" criterion in the jury instruction, the error favored Gorton-Lambert and thus warrants no remedy. The second erroneous instruction indeed favored Gorton-Lambert; but the first erroneous instruction favored Millis, and the only difference between them was the change of "or" to "and." Although on this appeal much is made of the "disjunctive" versus "conjunctive" as between these two sets of instructions, apparently the jury was not told that the second instruction made any substantial change from the first. While the jury is presumed to have applied the instruction as given, in this case the change in the instruction was as inconspicuous as it was significant.
 
 
 24
 Thus both sides proposed or acquiesced in erroneous instructions, citing Federal Circuit precedent that was inapplicable, and that appears to have contributed to the confusion. The parties and the trial court relied on Carman Industries, Inc. v. Wahl, 724 F.2d 932, 940, 220 USPQ 481, 487 (Fed. Cir. 1983) and In re Longi, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985). Both of these cases accepted "cross-reading." In Carman a design patent was compared for obviousness-type double patenting purposes with a utility patent; the court accepted the comparison of the utility claims with the design by applying the cross-reading test. The court in Carman did not emphasize that it was applying a different rule for the design/utility patent comparison, as against the utility/utility patent comparison. In re Longi did not relate to design patents; the Longi court correctly decided whether the claims of the second patent were obvious in view of the claims of the first patent. However, the court stated that it need not address the issue of whether cross-reading would apply, citing Carman.
 
 
 25
 It thus appears reasonable to conclude that the legal error was not recognized by the parties, and was not guarded as "invited error" by Gorton-Lambert. However, an error of law does not suffice to redo the process unless there is a denial of fundamental justice flowing from the error. Stewart v. Hall, 770 F.2d at 1271. Viewing the entire procedure and the record of trial, I do not discern such denial. Both sets of incorrect jury instructions explained, correctly, that a patentee is not permitted to extend patent life by patenting an obvious variant of a patented invention. The instructions were correct and explicit that the purpose of the law was to prevent the "extension of the term of a patent by prohibiting the issuance of claims in a second patent not patently [sic] distinct from the claims of the first patent." Although the second instruction incorrectly required complete cross-reading, the second instruction favored Gorton-Lambert.
 
 
 26
 Whether or not the erroneous instructions are believed to be "invited error," as the majority holds, I do not discern a denial of fundamental justice in the trial of this issue. Stewart v. Hall, 770 F.2d at 1271; Miller v. Premier Corp., 608 F.2d 983. Thus I concur in sustaining the jury verdict of invalidity of the '677 patent based on double patenting.
 
 II. INEQUITABLE CONDUCT
 
 27
 In marked contrast to the errors of law with respect to the issue of double patenting, the errors in law relating to the issue of inequitable conduct meet the Fourth Circuit's standard of plain error and denial of fundamental justice. The instruction that was given plainly contravened our en banc decision in Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 9 USPQ2d 1384 (Fed. Cir. 1988) (en banc), cert. denied, 490 U.S. 1067 (1989), including the failure to require proof of both a material misrepresentation and intent to deceive or mislead the patent office.
 
 
 28
 The jury was instructed that nondisclosure "may be evidence of an equivalent to a false misrepresentation." That instruction was plain and prejudicial error. Further, there was no evidence of misrepresentation, either material or misleading. An error of inventorship made without deceptive intent meets the criteria of neither intent nor materiality, as a matter of law. Further, there was not substantial evidence of incorrect inventorship, for the evidence that several employees worked on the machine[1] does not support a finding of material and intentional misrepresentation to the patent office. There was apparently no instruction on the correct law of inventorship, for example that "[a]n inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent," Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed. Cir.), cert. dismissed, 474 U.S. 976 (1985), for inventorship itself was not at issue.
 
 
 29
 Of course a patent must have the correct inventorship, but inventorship is not examined by the patent office, and errors in inventorship are readily corrected unless made with deceptive intent. See U.S.C. Sec.256; Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1573, 31 USPQ2d 1290, 1292 (Fed. Cir. 1994). The designation of inventorship is not part of the patent examination process, and the patent examiner will not give advice to an applicant. Although my colleagues in the majority appear to believe that the patentee should have asked the examiner to decide which if any of these employees were joint inventors, that procedure is not available to a patent applicant. The issue on which inequitable conduct was charged - that of failure to present the question of inventorship to the patent examiner - is not an issue of patent examination. Incorrect inventorship, if incorrect because of deceptive intent, will invalidate the patent. But the issue at trial was not whether the inventorship was correct; it was whether the applicant intentionally withheld from the patent office information that was required to be disclosed. With no evidence of deceptive intent in withholding information that was required to be disclosed, there can not have been a verdict of inequitable conduct.
 
 
 30
 Although the waiver provision of Rule 51 is important to the conduct of trials and is not readily overcome, the serious inadequacy of the evidence and plain error in the instruction seem to me to meet the criteria of the Fourth Circuit that fundamental error may be considered on appeal. The lapses in law were pervasive and highly prejudicial. See Management Systems Associates, Inc. v. McDonnell Douglas Corp., 762 F.2d 1161, 1177 (4th Cir. 1985) ("Certainly it is 'fundamental' error to give instructions which are hopelessly confusing and which fail 'to provide even the barest legal guideposts to aid the jury in rationally reaching a decision'.") (quoting P. Weidersum Associates v. National Home Construction Corp., 540 F.2d 62, 66 (2d Cir. 1976)). Thus I believe that the panel majority is incorrect in declining to review these issues. There is no hint of invited error on the part of counsel; there is, however, fundamental error of law, wherein "our refusal to consider such would result in the denial of fundamental justice," Stewart v. Hall, 770 F.2d at 1271.
 
 
 31
 On the correct law, I believe that the jury verdict on this issue can not stand. See Boyle v. United Technologies, 487 U.S. at 513-14 ("If the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated defense," a new trial is not necessary.) The majority's sustenance of the verdict under these circumstances is contrary to the appellate obligation to recognize and remedy fundamental error when justice requires.
 
 
 
 [1]
 There was testimony at trial by three ex-employees of Lambert, now employed by Millis. They testified that they had worked for William Lambert on the patented device. All three generally disclaimed "inventorship," stating that the device was a group effort. For example, Richard McGuire testified that "We built a complete scrubber out of aluminum, drilled holes and bolted everything together and I've got to say Mr. Lambert built that, but everyone was there. Whether you can say we all done it, I mean, that's up to you." Mr. McGuire also testified "I can't claim the eviscerator, no. I have built them, but I can't claim them, no." Witness Moore said: "I don't know whose idea it [the eviscerator scrubber] was. There was a lot of input in it, different people, no one individual that I know."