Unpublished opinions are not binding precedent in this circuit.
GREGORY, Chief Judge:
Plaintiff-appellee Angelo Osborne sued Defendant-appellant Corporal Peter Geor-giades, as well as Dione White and Meredith Lynn Pipitone, alleging violations of his constitutional rights under 42 U.S.C. §§ 1983 and 1985. Specifically, Osborne contends that Georgiades, in the process of *235 investigating him for alleged sexual abuse of his minor child, unreasonably seized him in violation of the Fourth and Fourteenth Amendments. Georgiades moved for summary judgment on grounds of qualified immunity. The district court denied the motion, holding that Georgiades is not entitled to qualified immunity. For the reasons stated below, we affirm the judgment of the district court.
I.
A.
As a preliminary matter, we view the facts in the light most favorable to Osborne, the nonmoving party. See ACLU of Md., Inc. v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993). Osborne and Pipitone are the parents of two minor children—a daughter (“JMLO”), five years old at the time of the events in question, and a son (“CJP”), then two years old. On November 1, 2010, Pipitone contacted the Harford County Child Advocacy Center to report the alleged sexual assault of JMLO. Pipitone claimed that JMLO did not want to spend Halloween with her father. JMLO purportedly told Pipitone that a few weeks prior, Osborne had [Redacted] Sealed App. 63.*
Later that day, White, a licensed social worker for the Harford County Child Advocacy Center, interviewed Pipitone. After speaking with Pipitone, White interviewed JMLO. Although Georgiades was not present, he remained in telephone contact with White and observed the interview from a nearby room via live video feed for purposes of investigating the allegations. White employed the Rapport, Anatomical Identification, Touch Inquiry, Abuse Scenario, Closure (“RATAC”) method when questioning JMLO. RATAC focuses on reducing any potential trauma to the child during the interview.
In her initial responses to White’s questions, JMLO consistently denied that Osborne, or anyone else, had touched her on parts of her body covered by a bathing suit. [Redacted] Id. In total, JMLO denied abuse six times. See J.A. 250, 252, 255 (classifying JMLO’s responses as “denials”).
[Redacted] Id. After approximately three minutes of similar questions, JMLO changed course and finally replied, “He did.” Id.
JMLO went on to state Id [Redacted] Id. JMLO also described [Redacted] She then referred to an incident at Osborne’s house in which CJP got in “trouble” with Osborne’s girlfriend. Id. Although it is not entirely clear what CJP did, JMLO stated “that’s why I’m never going over there again.” Id. White never asked any followup questions concerning that incident. Instead, White asked several questions regarding whether Osborne’s girlfriend and CJP “saw it happen.” Id. JMLO again changed course and stated that Osborne’s girlfriend was not present when the alleged abuse occurred and that CJP was. asleep. Id.
After JMLO described and demonstrated with dolls the alleged acts of abuse, White placed a phone call to Georgiades, who suggested other topics to discuss. J.A. 226, 237. After this call, she asked JMLO whether CJP was present during the second instance of abuse. JMLO stated that CJP was asleep in the bed next to her. Id. at 54. JMLO also stated Osborne [Redacted] Id. at 55. White then asked [Redacted] Id.
*236 Their conversation was then interrupted by a second phone call from Georgiades. After this conversation, White asked JMLO a series of questions regarding [Redacted] At this point, Georgiades immediately placed a third phone call, resulting in White terminating the interview. White and Georgiades spoke on three occasions throughout the interview.
After White completed the interview, Pi-pitone called Osborne to accuse him of sexually assaulting their daughter. With Pipitone’s consent, Georgiades listened in on the call. During that conversation, Osborne consistently denied Pipitone’s accusations. Osborne also told Pipitone he would take a polygraph test if she took one. J.A. 318, 319-20.
The most recent assault allegedly occurred on October 16, 2010. Dr. Paul Lo-monico conducted a thorough physical exam of JMLO on November 3, 2010, for evidence of sexual assault. He examined her entire body, [Redacted] Sealed App. 58. His medical report indicated “no physical signs ... of sexual abuse” but noted, “This does not rule out abuse.” Id.
On December 15, 2010, Georgiades met with Diane Tobin (“Tobin”), a Deputy State’s Attorney for Harford County, Maryland. After reviewing the video of the JMLO interview, Tobin accepted the case for prosecution. For over a month, Geor-giades attempted to contact Osborne, but was unsuccessful. On January 21, 2011, Georgiades spoke to Osborne, who stated that he would only speak with Georgiades with his attorney present. Id. at 68.
On January 24, 2011, Georgiades applied for an arrest warrant. Georgiades’s affidavit disclosed only JMLO’s accusations of sexual abuse but not her repeated denials, nor the results of the medical examination. An arrest warrant was issued, and Osborne was arrested on the same day. Osborne was charged with eight counts of sexual—assault-based offenses. On January 25, 2011, Osborne was detained in the Harford County Detention Center, with bail set for $500,000. A grand jury subsequently indicted Osborne on February 15, 2011, on sixteen counts of sexual-assault-related crimes. Osborne was incarcerated without bond for over eight months, until October 3, 2011, when a bond was set for $25,000. The state eventually declined to prosecute Osborne on December 13, 2011, instead placing his case on the inactive “stet” docket.
- B.
Osborne initiated the present action on January 23, 2014. Osborne claims that White, with Georgiades’s guidance, fabricated evidence against him by asking JMLO “unduly suggestive and leading” questions “designed and intended to cajole the minor child into making up a story to support” Pipitone’s accusations. J.A. 9. Osborne also claims that Georgiades knowingly omitted relevant facts from his application for Osborne’s arrest warrant. Osborne denies ever assaulting or even attempting to assault the minor child. He argues that his arrest and ensuing incarceration were “without justification, without probable cause, and were motivated by [Defendants’] wanton, malicious[,] and reckless desire to inflict great emotional and physical distress and pain and suffering upon” him. Id. at 11.
After the district court dismissed all claims against White and Pipitone, Geor-giades moved for summary judgment on the sole remaining claim that he violated Osborne’s Fourth Amendment right against unreasonable seizure under 42 U.S.C. § 1983. Georgiades argued that he is entitled to qualified immunity for his actions. The district court concluded that Georgiades is not entitled to immunity for *237 the acts underlying Osborne’s § 1983 claim—fabrication of evidence and omission of material facts from the warrant application. First, the court held that because the contents of the conversations between White and Georgiades were not “disclosed,” a reasonable jury could conclude that Georgiades exerted pressure that resulted in the fabrication of evidence against Osborne. J.A. at 331. Second, the court found that a reasonable jury could conclude that Georgiades’s warrant application contained omissions made deliberately or with reckless disregard for any misleading effect and that the omitted evidence had the potential to negate probable cause. Id. at 333. This appeal timely followed.
II.
We review an award of summary judgment on the basis of qualified immunity de novo. Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012). In reviewing the district court’s denial of summary judgment based on qualified immunity, “we accept as true the facts that the district court concluded may be reasonably inferred from the record when viewed in the light most favorable to the plaintiff.” Yates v. Terry, 817 F.3d 877, 884 (4th Cir. 2016) (citation omitted). “To the extent that the district court has not fully set forth the facts on which its decision is based, we assume the facts that may reasonably be inferred from the record when viewed in the light most favorable to the plaintiff.” Id. (citation omitted). “[T]his usually means adopting ... the plaintiffs version of the facts.” Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (quoting Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).
III.
Qualified immunity shields government officials from liability in a § 1983 suit unless their conduct violated “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether an official is entitled to qualified immunity, we ask (1) whether the facts illustrate that the official violated the plaintiffs constitutional right; and (2) whether the right was clearly established law at the time of the alleged event such that “a reasonable officer would have understood that his conduct violated the asserted right.” Miller v. Prince George’s County, 475 F.3d 621, 627 (4th Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The answer to both questions must be in the affirmative to defeat the official’s motion for summary judgment-on qualified immunity grounds. Id.
A.
First, we consider whether the facts demonstrate that Georgiades violated Osborne’s asserted constitutional right. Osborne maintains that the facts outlined above, considered in the light most favorable to him, allege a claim that he was seized without probable cause in violation of the Fourth Amendment. “The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.” Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). Osborne specifically contends that his seizure was unreasonable because it resulted from (1) Geor-giades’s fabrication of evidence and (2) the omission of material facts from the warrant application.
1.
Osborne alleges that Georgiades fabricated evidence by directing White to ask *238 JMLO misleading questions, thereby resulting in JMLO’s false account of sexual abuse. The district court held that a reasonable jury could conclude that Geor-giades committed a constitutional violation by exerting pressure that caused the fabrication of evidence against Osborne and directly resulted in his unreasonable seizure. J.A. 331. The district court further held that the right to be free from deprivation of liberty due to an officer’s fabrication of evidence was clearly established at the time of, Georgiades’s alleged conduct. J.A. 332. As such, the district concluded that Georgiades was not entitled to qualified immunity for the alleged fabrication.
Georgiades has waived his challenges to these'holdings by raising them for the first time in his reply brief. See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, 722 F.3d 591, 602 n.13 (4th Cir. 2013) (stating that appellant’s failure to address issue in opening brief will deem issue waived or abandoned). Therefore, Georgiades’s challenges are not properly before us, and we will not address the district court’s holdings on the fabrication claim.
2.
Osborne, arrested pursuant to a warrant, also contends that Georgiades unlawfully omitted certain key facts from the warrant application. Relying on the two-prong standard set forth in Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (requiring intent and materiality), the district court held that Osborne must show that Georgiades “deliberately or with reckless disregard for the truth made material false statements in his affidavit, ... or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.” J.A. 332 (quoting Miller, 475 F.3d at 627).
Below, we consider the district court’s holdings as to the intent and materiality prongs to determine whether Georgiades’s omissions amount to a constitutional violation.
a.
Initially, we conclude that Georgiades has waived any challenge to the district court’s holding regarding his intent to mislead. The district court held that a reasonable jury could conclude that Georgiades’s warrant application contained omissions made deliberately or with reckless disregard for any misleading effect. J.A. 332. Georgiades only makes a passing reference to the district court’s holding, contending in a footnote that “Osborne has failed to demonstrate that the omissions were made with reckless disregard for the truth.... However, the Court need not reach this issue since probable cause existed for the warrant against Osborne.” Appellant’s Br. 15 n.4. Georgiades makes no attempt to explain the basis for his belief, nor does he present any argument on why summary judgment should have been granted in his favor on this issue. The issue is therefore waived. See, e.g., Belk, Inc. v. Meyer Corp., 679 F.3d 146, 152 n.4 (4th Cir. 2012) (concluding that defendant waived issue for failure to develop argument in brief).
b.
Next, we consider the district court’s holding regarding the materiality of the omitted facts. Id. at 333. Georgiades argues that the district court erred by concluding that the omitted facts “could” and “had the potential” to negate a finding of probable cause. J.A. 333. We agree that the district court employed the wrong standard, but the error was harmless be *239 cause the omissions met the proper standard under Franks.
The correct materiality standard under Franks requires that the omissions be necessary to the neutral and disinterested magistrate’s finding of probable cause. Evans v. Chalmers, 703 F.3d 636, 650 (4th Cir. 2012) (quoting Miller, 475 F.3d at 628). The omission “must be such that its inclusion in the affidavit would defeat probable cause for arrest.” United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990). The court must insert the facts recklessly omitted and determine whether or not the “corrected” warrant affidavit would establish probable cause. Miller, 475 F.3d at 628. If the “corrected” warrant affidavit establishes probable cause, the omissions do not amount to a constitutional violation. Id.
Probable cause for an arrest “exists where the facts and circumstances within [the officer’s] knowledge and of which [he or she] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been ,.. committed by the person to be arrested.” Clipper v. Takoma Park, Md., 876 F.2d 17, 19 (4th Cir. 1989) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).
Osborne contends that a “corrected” affidavit would not have established probable cause for his arrest. As corrected, Geor-giades’s warrant application would have shown that (1) JMLO repeatedly denied (six times in total) that she was sexually abused by Osborne; (2) she then stated, and demonstrated by using dolls, [Redacted]; (3) the most recent acts of abuse occurred on October 16, 2010; and (4) a thorough medical exam conducted on November 3, 2010 revealed no physical signs of sexual abuse. Considering the totality of the circumstances presented by this information, the “corrected” warrant application would not have established probable cause to arrest Osborne.
The facts and circumstances presented by the “corrected” warrant application are not sufficient in themselves to warrant a person of reasonable caution in the belief that Osborne committed the offense stated in the application. The corrected warrant application would have asked the magistrate to issue a warrant for Osborne’s arrest in spite of JMLO’s inconsistent allegations of abuse and direct evidence that may contradict that any abuse occurred-Dr. Lomonico’s medical examination and report. [Redacted] As such, the omitted facts are material because their inclusion would have defeated probable cause.
B.
Georgiades has never contended that the right asserted by Osborne was not clearly established. For the reasons stated above, this issue is undoubtedly waived. And even if not waived, this contention is without merit.
The Fourth Amendment right to be arrested only on probable cause was clearly established at the time of the events at issue here. Miller, 475 F.3d at 632; Brooks, 85 F.3d at 183. More specifically, it was also clearly established “that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make ... omissions to seek a warrant that would otherwise be without probable cause.” Miller, 475 F.3d at 631-32 (collecting cases). The objective standard for qualified immunity accommodates the allegation of material omissions “because a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by [omitted facts] that the officer knows or should know [would ne *240 gate probable cause].” Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 2014).
We therefore conclude that Georgiades is not entitled to qualified immunity.
IV.
Georgiades also argues that the February 15, 2011, grand jury indictment “conclusively determined the existence of probable cause, which unless rebutted by Osborne, nullifies Osborne’s claims of false arrest and false imprisonment.” Appellant’s Br. 9. Georgiades, however, failed to raise this argument in the district court.
This Court has repeatedly held that issues raised for the first time on appeal generally will not be considered. Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (collecting cases). “The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.” In re Under Seal, 749 F.3d 276, 285 (4th Cir. 2014) (quoting Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). In this circuit, we exercise that discretion sparingly. Exceptions to this general rule are made only in very limited circumstances, such as when the newly raised argument establishes “fundamental error” or a denial of fundamental justice. Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir. 1985). The error must be “so serious and flagrant that it goes to the very integrity of the trial.” Id.
Because fundamental error is a more limited standard than the plain-error standard applied in criminal cases, we use the plain-error standard “as something of an intermediate step in a civil case.” In re Under Seal, 749 F.3d at 285-86. If a party in a civil case fails to meet the plain-error standard, it is clear that he also fails to establish fundamental error. Id.
Under the plain-error standard, we may correct an error not raised before the district court only whei'e the appellant demonstrates: (1) there is in fact an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant’s substantial rights, meaning it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Marcus, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010). We have refused, however, to conduct plain error review where the party “failed to make its most essential argument in its briefs or at oral argument: ... that the district court fundamentally or even plainly erred.” In re Under Seal, 749 F.3d at 292.
Here, Georgiades has not made his most essential argument. His “failure to argue for plain error and its application on appeal surely marks the end of the road for [his] argument for reversal not first presented to the district court.” Id. Thus, Georgiades’s argument is waived.
V.
For the foregoing reasons, the district court’s denial of Georgiades’s summary judgment motion is
AFFIRMED.

 The Court will cite to the audio and video recording of JMLO’s interview because the transcript, Sealed App. 36-56, contains numerous errors.